IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER A. LOPEZ,

          Plaintiff,

vs.                            Case No. 11-2226-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

          Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff supplemental security income payments.  The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the

1

conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On June 5, 2006, administrative law judge (ALJ) Bruze H. Zwecker issued his decision, finding that plaintiff could perform work that exists in significant numbers in the national economy (R. at 16-26). Plaintiff sought judicial review of the agency decision. Defendant filed a motion to remand, and on October 15, 2007, the U.S. District Court for the Western District of Missouri granted the motion to remand, reversed the decision of the Commissioner, and remanded the case for further hearing (R.

4

at 438-440).

On November 12, 2008, ALJ Evelyn M. Gunn issued her decision (R. at 425-437). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since February 4, 2004, her application date (R. at 427). At step two, the ALJ found that plaintiff had the following severe impairments: attention deficit hyperactivity disorder, HIV, obesity and bipolar disorder (R. at 427). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 427-428). After determining plaintiff's RFC (R. at 429), the ALJ determined at step four that plaintiff has no past relevant work (R. at 435). At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 436). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 437).

**III.  Did the ALJ err by failing to consider opinions expressed by Dr. Harms, a consulting psychologist, and LSCSW Berber, plaintiff's therapist?**

On September 9, 2003, Dr. Kathy Harms, a psychologist, conducted a psychological evaluation on the plaintiff at the request of Davies County Juvenile Court following the birth of her baby girl (R. at 342-345). Dr. Harms used the following tests as part of her evaluation:

Wechsler Adult Intelligence Test-III (WAIS-III)

Rorschach

Thematic Apperception Test (TAT)

Projective Drawings

Sentence Completion

Minnesota Multiphasic Personality Inventory (MMPI-2)

(R. at 343).  In regards to plaintiff's intellectual functioning, Dr. Harms found that plaintiff "has severe learning disabilities" and "is unable to compute or solve even very simple math calculations" (R. at 343).  Testing also indicated that plaintiff has "poor short-term memory and poor judgment, but has average comprehension" (R. at 343).

Dr. Harms stated that the MMPI-2 test results were valid. Dr. Harms indicated that plaintiff's psychological and personality test results indicated that plaintiff is "severely emotionally disturbed and has symptoms consistent with Bipolar Disorder and Borderline Personality Disorder" (R. at 344).  Dr. Harms further indicated the following:

> [Plaintiff] answered the questions on the MMPI-2 indicating that she has a great deal of problems with anger and anger control. She is often hostile, resentful and suspicious.  She has a very hard time with interpersonal relationships, but doesn't believe any of her problems are her fault. She is defensive and has extremely poor insight ability and even worse judgment.  She can be rigid and argumentative and extremely

6

> self-centered.  Her behavior can be bizarre,
> odd, obsessive and unpredictable.  She has
> trouble concentrating and making decisions
> and can have intrusive and disturbing
> thoughts.  She also pushes any limits given
> and loves to take risks and seeks excitement.
> She becomes bored easily and when she does,
> will do something to stir up excitement, even
> if it may be illegal.  She sometimes has a
> flight of ideas and thinks so fast she can't
> talk with sense.  She also sometimes has
> hallucinations.

(R. at 344).  Dr. Harms concluded that the combination of her

learning disabilities and her Bipolar Disorder would cause her a

multitude of problems and would make parenting an infant very

difficult.  Dr. Harms also stated that "[g]iven the severity of

her disabilities and disorder, she would probably qualify for

Social Security disability" (R. at 344).  Dr. Harms gave

plaintiff a GAF of 45[1] (R. at 345).  Inexplicably, the ALJ never

mentioned this psychological evaluation in her decision.  The

evaluation by Dr. Harms was particularly significant because Dr.

_____

[1]GAF (global assessment of functioning) scores can be found in the <u>Diagnostic and Statistical Manual of Mental Disorders</u>.  The scores in this case represent the following:

> 41-50: **Serious symptoms** (e.g., suicidal ideation, severe
> obsessional rituals, frequent shoplifting), **OR any serious
> impairment in social, occupational, or school functioning** (e.g.,
> no friends, unable to keep a job) (emphasis in original).

<u>Diagnostic and Statistical Manual of Mental Disorders</u> (DSM-IV-TR) (4th ed., text revision, American Psychiatric Association 2000 at 34) (emphasis in original).

   Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work.  A claimant's impairment might lie solely with the social, rather than the occupational sphere.  A GAF score of fifty or less, however, does suggest an inability to keep a job.  <u>Lee v. Barnhart</u>, 117 Fed. Appx. 674, 678 (10th Cir. Dec. 8, 2004).

Harms utilized testing in his evaluation that was not utilized in the evaluations by other medical sources.[2]

The record also contains a request for medical statement from Treva Berber, a LSCSW[3] (R. at 347-352).  Ms. Berber was plaintiff's therapist (R. at 216-220).  Licensed clinical social workers and therapists are "other" medical sources, whose opinions should be considered in accordance with SSR 06-03p, 2006 WL 2329939.  On the form, dated January 30, 2004 (R. at 352), Ms. Berber indicated that plaintiff had the following mental disorders:

> Functional psychotic disorders which cause severe functional limitations precluding competitive employment and requiring ongoing psychiatric or psychological treatment.
>
> Other severe and persistent mental illness, not controllable by medication or other treatment, causing severe functional limitations precluding competitive employment, and requiring ongoing psychiatric or psychological treatment.

(R. at 350).  Ms. Berber further indicated that plaintiff's mental condition prevented the performance of gainful employment

---

[2]The court would note that the September 9, 2003 evaluation by Dr. Harms was done approximately five months prior to her alleged onset date of February 4, 2004, which is the date plaintiff applied for supplemental security income payments (R. at 16, 425, 427).  However, a medical opinion of disability that predates the alleged onset date of disability should nonetheless be considered by the ALJ.  Lackey v. Barnhart, 127 Fed. Appx. 455, 458 (10th Cir. April 5, 2005); Hamlin v. Barnhart, 365 F.3d 1208, 1223 n.15 (10th Cir. 2004).

[3]LSCSW stands for a Licensed Specialist Clinical Social Worker (http://acronyms.thefreedictionary.com/LSCSW May 24, 2012).

(R. at 351).  Again, inexplicably, the ALJ failed to mention or discuss this report from Ms. Berber.

An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  This rule was recently described as a "well-known and overarching requirement."  Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  It is clear legal error to ignore a medical opinion.  Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  Furthermore, according to SSR 96-8p:

> If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.

1996 WL 374184 at *7.

The ALJ clearly erred by failing to consider the medical source opinions of Dr. Harms and Ms. Berber.  Therefore, this case must be remanded in order for the ALJ to consider these medical opinions in accordance with the agency's own regulations and rulings.  When this case is remanded, the opinions of Dr.

Schlosberg (R. at 169-174), Dr. Blum (R. at 175-194), Dr. Divadeenam[4] (R. at 102-105, 328-330), Dr. Marshall (R. at 363-364), Dr. Israel (R. at 357-359), and Dr. Holzschuh (R. at 582-586) must be reevaluated in light of the opinions of Dr. Harms, who made findings based on a series of tests, and Ms. Berber, who was plaintiff's therapist.

**IV.  Other issues raised by plaintiff**

Plaintiff has raised a number of other issues in her brief, including the ALJ's findings on plaintiff's degree of limitation in four functional areas (based on 20 C.F.R. § 416.920a(e)(4)), the weight given to other medical opinions, the weight given to a third party statement, plaintiff's credibility, plaintiff's RFC, and the ALJ's step five findings.  The court will not reach these issues because they may be affected by the ALJ's resolution of the case on remand after considering and determining what weight to accord to the medical opinions of Dr. Harms and Ms. Berber, and reevaluating the other medical opinion evidence in light of these two medical opinions.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

The court will briefly address one other issue raised by plaintiff.  Plaintiff alleges that the ALJ erred by filing to consider whether plaintiff's impairment met or equaled listed

---

[4]At one point in the record, this psychiatrist's name is spelled "Dr. Divadeenam (R. at 105), and at another point in the record it is spelled as "Dr. Divadeeman (R. at 330).

impairment 12.05C.  That impairment is as follows:

> 12.05 *Mental retardation:* Mental retardation
> refers to significantly subaverage general
> intellectual functioning with deficits in
> adaptive functioning initially manifested
> during the developmental period; *i.e.,* the
> evidence demonstrates or supports onset of
> the impairment before age 22.
>
> The required level of severity for this
> disorder is met when the requirements in A,
> B, C, or D are satisfied....
>
> ********************
>
> C.  A valid verbal, performance, or full
> scale IQ of 60 through 70 and a physical or
> other mental impairment imposing an
> additional and significant work-related
> limitation of function.

20 C.F.R., Pt. 404, Subpt. P., App. 1 at 479 (2011 at 511).

Plaintiff's IQ testing included the following results:

| date | full scale IQ | verbal IQ | performance IQ |
|------|---------------|-----------|----------------|
| 9/9/2003 | 78 | 87 | 73 (R. at 343) |
| 8/17/2004 | 77 | 82 | 75 (R. at 171) |
| 1/18/2006 | 79 | 82 | 80 (R. at 358) |

According to the regulations, when verbal, performance, and full
scale IQ scores are provided, the agency uses the lowest of these
in conjunction with 12.05.  20 C.F.R. Pt. 404, Subpt. P, App.
1(D)(6) 2011 at 507-508.

All of plaintiff's IQ scores are above 70, the lowest being
performance IQ scores of 73 and 75.  Plaintiff claims that the
ALJ should have considered POMS § DI 24515.056(D)(1)(c), which

states as follows concerning listed impairment 12.05C:

> However, slightly higher IQ's (e.g., 70-75)
> in the presence of other physical or mental
> disorders that impose additional and
> significant work-related limitation of
> function may support an equivalence
> determination.  It should be noted that
> generally the higher the IQ, the less likely
> medical equivalence in combination with
> another physical or mental impairment(s) can
> be found.

(https://secure.ssa.gov/apps10/poms.nsf/lnx/0424515056, May 25,
2012).

The Program Operations Manual System (POMS) is a policy and
procedural manual that employees of the Social Security
Administration use in evaluating social security claims.
Although the POMS does not have the force and effect of law, it
is nevertheless a persuasive interpretation by the Commissioner
of binding statutory and regulatory law.  Davis v. Secretary of
Health & Human Services, 867 F.2d 336, 340 (6th Cir. 1989);
Stillwell v. Sullivan, 1992 WL 401971 at *6 (D. Kan. Dec. 30,
1992).  The court's review of an agency's interpretation of a
statute or regulation it administers is highly deferential.  The
agency's interpretation, as set out in a POMS, is given
controlling weight unless it is arbitrary, capricious, or
contrary to law.  In other words, the agency's interpretation
must be given controlling weight unless it is plainly erroneous
or inconsistent with the regulations.  McNamar v. Apfel, 172 F.3d
764, 766, 767 (10th Cir. 1999).  Although POMS guidelines do not

have legal force, and do not bind the Commissioner, an ALJ should consider the POMS guidelines. <u>Shontos v. Barnhart</u>, 328 F.3d 418, 424 (8th Cir. 2003).

Plaintiff's counsel did not argue to the ALJ that listed impairment 12.05C should be considered in this case.  In addition, counsel's two page letter to the Appeals Council on December 3, 2008 that set forth numerous alleged errors by the ALJ in her decision, failed to even mention listed impairment 12.05C (R. at 419-420).  Despite the fact that the record contains numerous mental evaluations, plaintiff does not cite to any medical opinion evidence that plaintiff's impairments meet or equal listed impairment 12.05C.  It is plaintiff's burden at step three to present evidence establishing that his/her impairments meet or equal a listed impairment. <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  Given the lack of evidence, and the failure of plaintiff's counsel to raise the issue, the court finds that the ALJ was not required to address listed impairment 12.05C sua sponte. <u>Bland v. Astrue</u>, 2011 WL 1571463 at *2 (10th Cir. April 27, 2011).

Medical equivalence is defined in 20 C.F.R. § 404.1526(a,b) (2011 at 377-378).  Furthermore, 12.05C includes a capsule definition that mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the

developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  In the recent case of Crane v. Astrue, 369 Fed. Appx. 915, 921 (10th Cir. Mar. 17, 2010), the court, citing to DI 24515.056(B)(1), held that the above POMS is used only when the capsule definition of the listed impairment is satisfied.  In the absence of any evidence that a claimant met the capsule definition, there is no need to consider this POMS.  Therefore, on remand, the ALJ will need to consider listed impairment 12.05C only if plaintiff cites to or provides evidence that the capsule definition of the listed impairment is satisfied.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 29th day of May 2012, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge